## Case No. 7,539.

The JOSEPH HALL.

[10 Ben. 246.] [1]

District Court, E. D. New York. Jan., 1879.

Noah Tebbetts, for libellant.
Alexander & Ash, for creditor.

BENEDICT, District Judge. In this case a lien creditor, having a demand against this

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

vessel, inferior in rank to the claim of the crew, and which will be reduced by the amount paid the crew because the proceeds of the sale of the vessel are insufficient to pay all the liens in full, presents to the court the question whether the pilot of the boat is entitled to recover wages up to the time the boat was sold by the marshal, or only up to the time of her seizure, under the process issued upon libels filed against her.

The decision of this question must depend upon other facts than the fact that the boat of which the libellant was pilot was seized by the marshal on a certain day. The mere fact that a vessel is seized by the marshal by virtue of process in rem is not sufficient to terminate the contract with the seamen composing the crew at the time of such seizure. But there may be circumstances attending the seizure known to the seamen, equivalent to notice to him that his services will no longer be required by those who employed him; and in such case the seaman will be deemed discharged and entitled at once to pursue the vessel for whatever may then be due him.

In this case the circumstances are these: The boat was engaged in making short trips from New York up the North river to Jersey City and to ports on the Sound. The pilot was hired by the month, and not for any specific period. His month expired September 24th. On September 25th, the boat was seized under a libel, and upon the seizure the boat stopped running. The master left her; the rest of the crew at once libelled her for their wages, and the boat was wholly abandoned by her owners. From that time the pilot, who had up to that time lived on board the vessel, lived at his own home, but during the custody of the marshal and up to the 10th of October, he went on board the boat daily and pumped her out. This he did of his own volition and not by any direction of the owners, nor is there any evidence that the service was required by the condition of the vessel. Within a few days after the seizure the libellant sought other employment, although without success. It does not appear that what the libellant did in the way of pumping or otherwise on board the vessel, formed any part of the labor usually performed by him in the capacity for which he was hired.

These circumstances are sufficient to show that the libellant had reasonable notice that his services as pilot would no longer be required on board the boat, and his right to wages must be deemed to have terminated at the time of the seizure of the boat by the marshal and her abandonment by her owners.

In the case of The Monte Christo [Case No. 9,718], referred to by the libellant, there was evidence of an express request by the owners that the seamen remain on board notwithstanding the seizure by the marshal.